IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REYNI JOSE PENA SISA,<br><br>    Petitioner,<br><br>v.<br><br>WARDEN, *Moshannon Valley Processing Center, et al.*,<br><br>    Respondents. | Case No. 3:26-cv-004<br>Judge Stephanie L. Haines |

## ORDER

Pursuant to Federal Rule of Civil Procedure 65:

The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) *specific facts* in an affidavit or a verified complaint *clearly show that immediate and irreparable injury, loss, or damage will result* to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1) (emphasis added). Further, in order to obtain a temporary restraining order (a "T.R.O.") a petitioner must show that: (1) he is likely to succeed on the merits, (2) denial will result in irreparable harm to the petitioner, (3) granting the injunction will not result in irreparable harm to the respondent(s), and (4) granting the injunction is in the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998); *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction."). The first two factors, likelihood of success on the merits and irreparable harm, "operate both as essential elements and as factors that guide the exercise of equitable discretion. They are elements because the failure of the moving party to make *either* of those threshold showings is fatal to the issuance of a

preliminary injunction." *Transcontinental Gas Pipe Line Co., LLC v. Pennsylvania Environmental Hearing Board*, 108 F.4th 144, 150 (3d Cir. 2024) (emphasis added).

Here, upon review of Petitioner Reyni Jose Pena Sisa ("Petitioner") Motion for a T.R.O., ECF No. 2, the Court finds that Petitioner has failed to make a sufficient showing to obtain a T.R.O. at this time.[1] Therefore, **IT IS HEREBY ORDERED** that Petitioner's Motion at ECF No. 2 is **DENIED.**

---

[1] The Court takes this opportunity to more fully explain its decision. Petitioner sets forth that he is a native and citizen of the Dominican Republic and also a citizen of Spain. He is married to a U.S. Citizen and is in the process of applying for permanent residence, with an interview scheduled with the U.S. Citizenship and Immigration Services ("USCIS") for January 21, 2026. He has no criminal history. On December 13, 2025, United States Immigration and Customs Enforcement ("ICE") detained Petitioner during a traffic stop without any individualized assessment of whether he posed a flight risk or danger to the community under 8 U.S.C. § 1226(a). ECF No. 1, pp. 2-3. He is currently held at the Moshannon Valley Processing Center ("MVPC") pursuant to 8 U.S.C. § 1226. ECF No. 1, p. 3. Petitioner is not the subject of a final order of removal and, thus, is not detained pursuant to 8 U.S.C. § 1231. *Id.*

In terms of the relief requested by Petitioner in his Motion for a T.R.O., requests that this Court enter an Order: "enjoining Respondents from moving Petitioner from Moshannon Valley Processing Center during the pendency of the habeas process and ensuring that he receives an individualized assessment required under 8 U.S.C. § 1226(a), either by ordering Petitioner's immediate release from Respondent's custody or providing a procedurally adequate bond hearing." ECF No. 2, p. 1.

With respect to Petitioner's request for an Order that both enjoins Respondents from transferring him to a different facility and directs that Petitioner remain in his current place of detention during the pendency of these proceedings, the Court notes that such a request from an alien detainee in custody pursuant to the Immigration and Nationality Act ("INA") raises jurisdictional concerns. Congress has "limited federal district courts' jurisdiction to review decisions or actions made pursuant to the sound discretion of DHS officials[.]" *Jane v. Rodriguez*, No. CV 20-5922 (ES), 2020 WL 10140953, at *1 (D.N.J. May 22, 2020). Indeed, 8 U.S.C. § 1252(a)(1)(B)(ii) provides that "no court shall have jurisdiction to review any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security…" And, in 8 U.S.C. § 1231(g)(1), Congress clearly set forth that: "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." In this way, § 1231(g)(1) establishes that:

> [T]he place of detention is left to the discretion of the Attorney General. *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Gandarillas–Zambrana v. BIA,* 44 F.3d 1251, 1256 (4th Cir.1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings ... and therefore, to transfer aliens from one detention center to another."); *Rios–Berrios v. INS,* 776 F.2d 859, 863 (9th Cir.1985) ("We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide."); *Sasso v. Milhollan,* 735 F.Supp. 1045, 1046 (S.D.Fla.1990) (holding that the Attorney General has discretion over location of detention).

*Sinclair v. Attorney General of U.S.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006).

**IT IS FURTHER ORDERED** that all remaining matters in this case remain referred to the Magistrate Judge for consideration in the first instance.

DATED: January 9, 2026:  BY THE COURT:

*[signature]*
STEPHANIE L. HAINES
UNITED STATES DISTRICT JUDGE

---

Indeed, "Congress has vested the Department of Homeland Security ("DHS") with authority to enforce the nation's immigration laws. Thus, as a part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings... and therefore, to transfer aliens from one detention center to another.'" *Calla-Collado v. Attorney General of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (quoting *Gandarillas-Zambrana*, 44 F.3d at 1256). In light of these principles, the Court finds that it does not possess jurisdictional authority to enjoin Respondents from transferring Petitioner or to direct that Petitioner remain in his current place of detention during the pendency of these proceedings.

Petitioner also requests that this Court grant him a T.R.O. and order his immediate release or a bond hearing. Either form of the relief Petitioner requests here goes beyond the "limited nature of a [T.R.O.]" and instead requests "mandatory, affirmative relief[.]" *Hope I*, 956 F.3d at 162 (finding that where the district court purported to enter an *ex parte* T.R.O. but directed the release of twenty petitioners, the "relief altered the status quo, exceeding the temporary and limited nature of a [T.R.O.]") (citing *Granny Goose*, 415 U.S. at 439). Because mandatory, affirmative relief may not be afforded via a T.R.O, *supra* Section I, the Court must, therefore, DENY Petitioner's Motion at ECF No. 2.